STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
COUNTY OF DURHAM     FILED     SUPERIOR COURT DIVISION
                         2018 MAY 30 P 4:05     18 CVS _____

KATHRYN MCHUTCHISON           )
                DURHAM CO., C.S.C. )
                BY_____ )
                Plaintiff, )
                                  )
          v.                             )              COMPLAINT
                                  )       (Jury Trial Demanded)
SPENCER SCHAR                   )
                                  )
                                  )
               Defendants. )
                                  )

NOW COMES, the Plaintiff, by and through counsel of record, complaining of the Defendant as follows:

**JURISDICTION & VENUE**

1. The Plaintiff, Kathryn "Kit" McHutchison (hereinafter "Kit" or "Ms. McHutchison") is a resident of Durham County, North Carolina, where she maintains her home address. Ms. McHutchison is a student at Elon University in Elon, North Carolina.

2. Upon information and belief, Defendant Spencer Schar is a resident of Alamance County, North Carolina.

3. Venue is proper pursuant to N.C. Gen. Stat. § 1-82, and the Court has jurisdiction over the parties and subject matter of this action.

## FACTS RELEVANT TO ALL CLAIMS

All of the following allegations are made upon good faith information and belief.

4. On October 20, 2017, Plaintiff was planning to attend a party with friends from her sorority. Prior to attending the party, plaintiff and several friends went to the apartment of her sorority sisters, Sally Collemore (hereinafter "Sally") and Carrigan Bain (hereinafter "Carrigan").

5. Kit, Sally and the other members of the sorority had invited dates to attend the party with them, and to socialize together prior to the party at Sally's apartment.

6. Kit's date that night was a friend and fellow student at Elon University named Nate Joslin (hereinafter "Nate").

7. Sally's date that night was Defendant Schar.

8. After Kit, Sally and Nate had arrived at Sally's apartment that evening, the Defendant arrived.

9. Defendant Schar previously had been drinking alcoholic beverages and was intoxicated at the time he arrived at Sally's apartment.

10. Defendant Schar was 20 years of age at the time and was violating the law by drinking underage.

11. Defendant Schar was staggering and had altered gait at the time he arrived at Sally's apartment.

12. Upon arrival at Sally's apartment, Defendant Schar told Kit, Sally, Nate and the others present that he had "been drinking for two hours" and that he had "drank 5 beers."

13. After Defendant Schar's arrival, individuals at the apartment began drinking mixed vodka drinks and Defendant Schar drank multiple vodka drinks.

14. Kit was 21 years old at the time and was thus acting legally in consuming alcoholic beverages. At all times, Kit consumed said beverages in a responsible manner, she never became intoxicated, and she never acted in an intoxicated manner.

15. Defendant Schar was drinking excessively at Sally's apartment and was encouraging others to drink and "take shots" with him. Kit did not do so.

16. After remaining at Sally's apartment for one to two hours, it was time for the sorority party to begin and everyone from Sally's apartment began walking to the location of the party, which was within walking distance.

17. The sorority party was at a house with a large wedding tent set up outside with a wooden dance floor where people could dance while a DJ played music.

18. Defendant Schar was walking around the party holding a bottle of vodka and drinking vodka straight from the bottle.

19. Defendant Schar continued to drink alcohol at the party.

20. Defendant Schar was staggering and having trouble walking and talking while at the party.

21. Approximately 30 minutes after arriving at the party, Defendant Schar fell on his face on the dance floor around people who were dancing.

22. Upon seeing Defendant Schar on the floor and concerned for his safety, Kit and Sally, neither of whom was impaired, helped Defendant Schar up and planned to walk him back to his home and help him get safely to bed before Kit and Sally would return to the party.

23. Kit and Sally assisted Defendant Schar with walking out of the party tent as he was staggering and loudly talking saying "I don't want to leave."

24. Nate came outside to see what was going on with Defendant Schar, and Kit briefly left Sally and Defendant Schar to speak with Nate about the situation.

25. At this time, Defendant Schar violently grabbed Sally by the throat and choked her, and then forcibly pressed her body up against the wall of the house while choking her.

26. Defendant Schar released his chokehold of Sally's neck when Kit returned. Kit did not witness the choking but could tell upon her return that something bad and physical had just occurred and that Sally was upset. Sally told Kit that Defendant Schar was being aggressive and "always like this when he is drunk" and just needed to go home.

27. Sally arranged for an Uber taxi ride for Defendant Schar to take him back to his residence.

28. While waiting for the Uber to arrive, Defendant Schar slapped Sally in the face.

29. Carrigan came out and met Sally after she was slapped in the face and took her away from Defendant Schar while Nate and Kit continued to wait with Defendant Schar by the street at a concern for his own safety.

30. Nate called a friend who was a designated driver for the night and asked that he come to the scene to pick up Defendant Schar and drive him home.

31. While Nate was on the phone with the designated driver, Kit calmly told Defendant Schar that he needed to settle down and "chill out."

32. In response, and without warning, Defendant Schar punched Kit full force in the stomach.

33. Defendant Schar then, without warning, kicked Kit in the stomach.

34. Defendant Schar then, without warning, punched Kit full force and directly in her face.

35. Defendant Schar's punches to Kit's face and stomach, and kick to Kit's stomach, were completely unprovoked.

36. In the moments before the punches and kicks landed, Kit apprehended that Defendant Schar was about to punch and kick her and could do nothing to stop being violently attacked by Defendant Schar in this way.

37. Kit began bleeding from the mouth caused by the force of the punch from Defendant Schar.

38. Kit screamed and told Nate that she has just been attacked and punched in the face by Defendant Schar.

39. Defendant Schar approached Kit again and Nate was forced to intervene and try to protect Kit, who was defenseless and far outmatched physically by Defendant Schar in his drunken and enraged state. Nate intervened by pushing Defendant Schar to the ground.

40. Defendant Schar began cussing and said to Nate "my dad will kill you."

41. Nate helped Defendant Schar up off the ground and reached to pick up his phone that had fallen to the ground. Defendant Schar then punched Nate in the face when Nate was not looking. Nate fell to the ground with the force of the punch.

42. The designated driver's vehicle called by Nate arrived at the scene.

43. Nate's friend Sam Shaw (hereinafter "Sam") was in the car with the designated driver and witnessed Defendant Schar punch Nate in the face when Nate was defenseless and was not looking.

44. Acting in the defense of others to try to protect them from the violent and unprovoked attacks of Defendant Schar, Sam ran from the car and tackled and punched Defendant Schar to stop him from attacking anyone else. Sam's reasonable and heroic action caused Defendant Schar to finally cease his violent attacks on others.

45. Defendant Schar was helped into the designated driver's car and driven to his residence.

46. Defendant Schar caused bodily injuries to Kit, Sally and Nate on the night of October 20, 2017, and caused Plaintiff to suffer harmful and painful emotional suffering, terror, and distress.

47. Defendant Schar voluntarily became intoxicated and was never forced by anyone to consume any alcohol or other intoxicating substance. Any and all intoxication of Defendant Schar was a result of his own intentional, conscious and voluntary decisions.

48. Defendant Schar made the conscious, voluntary and intentional choice to punch and kick Kit.

49. Defendant Schar made the conscious, voluntary and intentional choice to choke and slap Sally.

50. Defendant Schar made the conscious, voluntary and intentional choice to punch Nate.

51. Kit never did anything to cause Defendant Schar to become intoxicated and never provided any alcohol to Defendant Schar.

52. Kit was above the legal age for drinking alcohol on October 20, 2017 and, although she did socially consume some alcohol, was not intoxicated at the time of Defendant Schar's unprovoked and violent attack on her.

53. Kit never did anything to provoke Defendant Schar or justify his use of violence against her.

54. Kit never used any physical force or any threat of physical force against Defendant Schar.

55. At all times relevant to the events alleged herein, Kit conducted herself in a safe, reasonable and prudent manner.

56. Shortly after the incident, Elon University became aware that Defendant Schar had allegedly assaulted and battered two female students of Elon University, as well as a male student.

57. Elon University conducted an internal investigation into the events of October 20, 2017 and, upon information and belief, rather than expel Defendant for his shocking wrongful conduct, Elon University instead chose to suspend Defendant Schar for only one semester as a result. Elon University suspended student Sam Shaw for an entire year for his coming to the defense of his fellow students.

58. Prior to October 20, 2017, Defendant Schar's family donated several millions of dollars to Elon University, including making such a sizable donation that the basketball arena at the University was named the "Schar Center." The Schar family, upon information and belief, exerts great influence and power over Elon University

59. Upon information and belief, Defendant Schar, through himself or his agents, has communicated false information to people at Elon University about the events of October 20, 2017. The false information communicated by Defendant Schar and/or his agents regarding the October 20, 2017 incident has caused Kit to suffer additional emotional and mental harm and has caused representatives from Elon University to scrutinize the accounts of her and the other victims based on their biased reliance on the false information from Defendant Schar.

60. In addition, Kit remains fearful of Defendant Schar, who is still allowed to attend Elon University and may, at any time, encounter, intimidate, or retaliate against Plaintiff.

61. As a result of the power and influence over the University exerted by Defendant Schar and his family, Kit has been in reasonable fear and worry that the University will improperly take action against her and her friend who did nothing wrong in this incident. This has been borne out by University investigators calling Kit into multiple interrogation sessions, demanding to know whether she or anyone else forced Defendant Schar to drink that night, or

whether Kit had done anything improper. In addition, the University also interrogated Sam Shaw, who heroically acted to stop Spencer Schar in defense of others. The result of these "investigations" is that Elon chose to disproportionately suspend Sam for the entire year, and only suspend Defendant for one semester.

62. As a direct and proximate result of the wrongful and negligent conduct of Defendant Schar, Plaintiff suffered bodily injuries, physical pain, mental and emotional suffering, medical expenses, and other damages as may be proven at trial in excess of $25,000.00.

## FIRST CLAIM FOR RELIEF
### Battery by Defendant Schar

63. The preceding and foregoing allegations are incorporated by reference as if set forth fully herein.

64. Defendant Schar intentionally inflicted harmful or offensive contact upon Plaintiff's person by striking her violently in the stomach and face by kicking and punching her.

65. The harmful or offensive contact inflicted upon Plaintiff's person by Defendant Schar was without Plaintiff's consent.

66. As a result of the Defendant's conduct as alleged herein, Plaintiff was, in fact, harmed and highly offended.

67. As a result of the Defendant's conduct as alleged herein, Plaintiff suffered physical injury and mental suffering.

68. As a direct and proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered bodily injuries, physical pain, mental and emotional suffering, medical expenses, and other damages as may be proven at trial in excess of $25,000.00.

69. In committing the battery alleged herein, Defendant acted intentionally, deliberately, recklessly, willfully, wantonly and/or in a conscious and intentional disregard to

the rights and safety of Plaintiff and others similarly situated and Defendant Schar is liable to Plaintiff for punitive damages.

## SECOND CLAIM FOR RELIEF
### Assault by Defendant Schar

70. The preceding and foregoing allegations are incorporated by reference as if set forth fully herein.

71. Defendant intentionally acted with displays of force or violence against Plaintiff. These displays of force or violence, include but are not limited to, the incident alleged above where Defendant punched Plaintiff in the face and stomach and kicked her in the stomach.

72. Defendant Schar's intentional acts as described more fully hereinabove, put Plaintiff in actual, subjective apprehension of imminent harmful or offensive contact.

73. Plaintiff's apprehension was objectively reasonable under the circumstances in that a person of ordinary care and prudence under the same or similar circumstances would have believed that harmful, or offensive contact was about to occur.

74. Defendant's actions proximately caused Plaintiff harm.

75. As a direct and proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered bodily injuries, physical pain, mental and emotional suffering, medical expenses, and other damages as may be proven at trial in excess of $25,000.00.

76. In committing the assault alleged herein, Defendant acted intentionally, deliberately, recklessly, willfully, wantonly and/or in a conscious and intentional disregard to the rights and safety of Plaintiff and others similarly situated and Defendant Schar is liable to Plaintiff for punitive damages.

### THIRD CLAIM FOR RELIEF
### Negligence, Negligence per se, Gross Negligence, and
### Willful or Wanton Conduct of Defendant Schar

77. The allegations set forth in the preceding and foregoing paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

78. At all times relevant to this action, Defendant Schar owed Plaintiff and others around him a duty to not drink alcohol under the legal age, to not become intoxicated, to not threaten or physically attack them, and to not threaten or inflict harm upon them as a result of his conduct.

79. At the time and place complained of, Defendant Schar was negligent, grossly negligent, and acted willfully and wantonly, in that he: consciously chose to get intoxicated and then acted in a violent and aggressive manner towards Plaintiff and others, as alleged herein.

80. At the time and place complained of, Defendant Schar was negligent, grossly negligent, and acted willfully and wantonly, in that he failed to act in a reasonable and prudent way to prevent causing harm to others.

81. At the time and place complained of, Defendant Schar was negligent, grossly negligent, and acted willfully and wantonly, in that he failed to exercise the degree of care which a reasonable and prudent person would have exercised under the same or similar circumstances.

82. At the time and place complained of, Defendant Schar was negligent, grossly negligent, and acted willfully and wantonly, in that he committed an assault of a female in violation of N.C. Gen. Stat. § 14-33(c)(2). Defendant's failure to comply with N.C. Gen. Stat. § 14-33(c)(2) is negligence per se.

83. At the time and place complained of, Defendant Schar was negligent, grossly negligent, and acted willfully and wantonly, in that he committed an assault and battery in violation of N.C. Gen. Stat. § 14-33(a). Defendant's failure to comply with N.C. Gen. Stat. § 14-33(c)(2) is negligence per se.

84. At the time and place complained of, Defendant Schar, was negligent, grossly negligent, and acted willfully and wantonly, in that he breached duties of care and diligence that she owed to the Plaintiff.

85. At the time and place complained of, Defendant Schar was negligent, grossly negligent, and acted willfully and wantonly, in that he was otherwise careless and negligent as will be proven through discovery of the evidence or at trial.

86. Defendant's conduct as described herein was negligent, grossly negligent, reckless, willful and wanton.

87. As a direct and proximate result of the negligence, negligence per se, gross negligence, reckless conduct, and willful and wanton conduct of Defendant as alleged herein, Plaintiff has suffered bodily injuries, physical pain, mental and emotional suffering, medical expenses, and other damages as may be proven at trial in excess of $25,000.00.

88. In committing the negligence, negligence per se, gross negligence, reckless conduct, and willful and wanton conduct alleged herein, Defendant acted intentionally, deliberately, recklessly, willfully, wantonly and/or in a conscious and intentional disregard to the rights and safety of Plaintiff and others similarly situated and Defendant Schar is liable to Plaintiff for punitive damages.

## PUNITIVE DAMAGES

89. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

90. Pursuant to N.C.G.S § 1D-1 et. seq., as a direct and proximate result of the grossly negligent, reckless, intentional, willful and/or wanton conduct of Defendant Schar, as well as his conscious disregard of the health and safety of Plaintiff and others as alleged herein, Plaintiff is entitled to recover punitive damages from Defendant in an amount later to be determined by the finder of fact at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1. That Plaintiff have and recover judgment against Defendant for compensatory damages in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00);
2. That the costs of this action, to include prejudgment and post-judgment interest and all other costs incurred and allowed by law, be taxed to the Defendant;
3. For punitive damages as may be allowed by law;
4. For reasonable attorney's fees as may be allowed by law;
5. For any and all costs, expenses and interest as may be allowed by law;
6. That all issues of fact be tried to a jury; and
7. For such other and further relief as the Court deems just and proper.

This is the 30th day of May, 2018.

ZAYTOUN LAW FIRM, PLLC

_____
Robert E. Zaytoun (N.C. Bar. No. 6942)
Matthew D. Ballew (N.C. Bar No. 39515)
John R. Taylor (N.C. Bar No. 43248)
Attorneys for Plaintiffs
3130 Fairhill Drive, Suite 100
Raleigh, NC 27612
(919) 832-6690
(919) 831-4793 (fax)

Page 12 of 12

Case 1:18-cv-00507-LCB-JEP   Document 7   Filed 06/15/18   Page 12 of 12